IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> BRIAN B. TUCKER <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br><br><br> Case No. 2:04-CR-00170 <br><br> Related Case No. 2:07-cv-000999 <br><br> Judge Dee Benson |

      Before the court are Brian B. Tucker's Federal Rule of Civil Procedure 60(b) motion to reduce/modify sentence and a related motion to enforce plea agreement through specific performance. The United States responded to Mr. Tucker's Rule 60(b) motion but has not responded to his motion to enforce plea agreement. Both motions were filed by Mr. Tucker in case number 2:04-cr-000170 DB, which was Tucker's underlying criminal bank robbery case. Both motions, however, are obviously seeking relief that is civil in nature and should more properly be regarded as an extension of Mr. Tucker's original habeas corpus petition, case number 2:07-cv-000999.

1

**BACKGROUND**

The background facts that pertain to this case have been set forth in detail in previous opinions of both this court and the United States Court of Appeals for the 10th Circuit and will not be fully replicated here. See Tucker v. United States, 2008 WL 732724 (D. Utah March 17, 2008); see also United States v. Tucker, 363 Fed.Appx. 643 (10th Cir. 2010); United States v. Tucker, 332 Fed.Appx. 484 (19th Cir. 2009); United States v. Tucker, 298 Fed.Appx. 794 (10th Cir. 2008); United States v. Tucker, 253 Fed.Appx. 718 (10th Cir. 2007). For the purpose of the present motion it is important to restate the following:

1) In 2004 Tucker and two other persons, Troy Hansen and Steven Bingham, committed two bank robberies in Utah. The first robbery was at the Far West Bank in Orem, on February 20, and the second at Zions Bank in Herriman on March 5.

At the Orem robbery Hansen and Bingham entered the bank carrying a shotgun and a handgun, respectively, with Hansen discharging the shotgun inside the bank. Tucker's role was to create a diversion by planting a bomb underneath a car and calling in a bomb threat to the Orem police department and by calling another bank across town and telling a bank employee that he had placed a bomb in the bank building.

At the Herriman robbery, Hansen and Bingham again entered the bank, this time without guns, and made off with some $78,000. Tucker's job was to place a getaway car close by to assist their escape.

2) After his indictment, Tucker agreed to a plea deal in which he would plead guilty to four counts: 1) aiding and abetting an armed bank robbery (the Orem robbery); (2) aiding and

abetting using a firearm in relation to a crime of violence (the Orem robbery); (3) using an explosive to commit a felony (the Orem robbery); and (4) aiding and abetting a bank robbery (the Herriman robbery). Numbers (1) and (4), as grouped, carried a guidelines sentencing range of 46 to 57 months in prison. Numbers (2) and (3) each required a minimum mandatory sentence of 10 years, which must run consecutively to each other and to the sentence imposed for the underlying bank robberies. Therefore, Tucker was facing a possible sentence of some 24 years. In exchange for the guilty pleas the government agreed, among other things, to file a downward departure motion pursuant to § 5K1.1 of the Sentencing Guidelines if Tucker provided substantial assistance and to move for a reduction in sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure after the defendant had been sentenced and after "he has provided truthful information and/or testimony regarding the bank robberies, specifically the Grand Junction case." Case No. 2:04-CR-170 DB, Dkt. No. 140, Statement in Advance of Plea at 7.

With this deal in place, Tucker entered his guilty pleas on March 1, 2006. His sentencing hearing was originally set for May 4, 2006, but was continued while Tucker was engaged in debriefings with the government. Finally, and this is significant for purposes of the present motions, Tucker's sentencing took place on December 21, 2006, some seven-and-a-half months later, which was *after* Tucker had been debriefed by the government and after he had provided whatever information he would provide to the government about the bank robberies, including the Grand Junction robbery.

Before the sentencing hearing, the Government filed a 5K1.1 motion which allowed the court to depart below the minimum mandatory sentences. The motion was based on the

government's assessment that the defendant had provided the necessary substantial assistance. The quantity and quantity of Tucker's assistance to the government was a significant factor at the sentencing hearing and was discussed in detail. The court expressed some reservation about whether Tucker's assistance qualified as "substantial" but in the end granted the motion and imposed a 12 year sentence, which represented a 12 year reduction from the 24 year sentence Tucker was otherwise facing.

During the sentencing hearing the parties discussed Tucker's assistance to the government and the government's obligation under the plea agreement to recommend, if appropriate, a reduction under § 5K1.1 and Rule 35. Regarding the latter, the prosecutor, Mr. Esqueda, said the following:

> I would ask the Court to focus on the nature and circumstances of the offenses. It is true that Mr. Tucker has provided some information to the government. Some of the information was quite good, and most recently I really thought that we could help Mr. Tucker even more, except the prosecutors in the case that he provided information on decided he just had too much liability with them in his testimony and chose not to use him based upon that and because of this case . . . .

Case No. 2:04-CR-170 DB, Dkt. No. 187, Tr. of Sentencing Hrg. at 9.

Accordingly, no Rule 35 motion was made by the government. As noted above, the sentencing had been continued to a later date because of the possibility of such a motion, but because the government felt Tucker's cooperation was insufficient to warrant the filing of a Rule 35 motion, it did not happen. At that point in time it was clear to the court, the prosecutor, and, most importantly, the defendant, that the Government was not, and would not be, filing a Rule 35 motion for a further reduction in his sentence. See id. at 4-6. In this regard, the following

4

colloquy took place:

> MR. BERARDI (Counsel for Tucker): Thank you, Your Honor. A few brief points. *One of the provisions, number four of the plea agreement, the government has agreed to file the Rule 35 pursuant to Mr. Tucker's truthful testimony and/or information regarding these other matters which he has provided.* I am not sure if the government is planning on filing that or not.
>
> THE COURT: Do you mean a later filed Rule 35?
>
> MR. BERARDI: Well, that is what the government is indicating that they were going to do.
>
> THE COURT: They have filed a motion for a departure from the mandatory minimum sentencing laws pursuant to Section 5K1.1.
>
> MR. BERARDI: Right.
>
> THE COURT: Then why are you concerned about Rule 35? That allows me to go below the mandatory minimum. What else would you be anticipating?
>
> MR. BERARDI: Well, only because my understanding is that the last time we were here was to give Mr. Tucker an opportunity to provide other information.
>
> THE COURT: Right. *He has provided whatever he has provided and the government has filed their motion.* I don't understand what you're asking. Help me out. Maybe I am misunderstanding you.
>
> MR. ESQUEDA (Prosecutor): I believe it was contemplated that an additional motion under Rule 35 would be filed should Mr. Tucker provide additional information and testify in other events. *After meeting with you last time, we attempted to do that. He did provide other information, but as it turned out, the prosecutors in that particular case felt that Mr. Tucker would not benefit their case. Therefore, there would be no testimony and, therefore, there would be no Rule 35.* In our discussion in chambers, since the government did file the 5K1.1, it allows the Court to go below the minimum mandatory.
>
> MR. BERARDI: Well, Your Honor, the only thing is that the plea agreement states upon Mr. Tucker's truthful information and/or testifying. I mean, the government is now implying that he has to testify to fulfill his obligation, and that is not what the plea agreement stated.

5

> THE COURT: Well, again, tell me why this matters.
>
> MR. BERARDI: I don't know if it matters, Your Honor.
>
> THE COURT: Well, if it does not matter, then we shouldn't be spending our time on it.
>
> MR. BERARDI: Well, Your Honor, Mr. Tucker just stated that with the amount of years he is looking at, that that would bring down the total amount, could potentially bring it down from whatever the Court was to impose.
>
> THE COURT: Not necessarily. I don't think it would. *Whatever he has done to assist the government and to assist the prosecutor will be reported to me by the prosecutor, and that will be the basis for the recommendation from the prosecutor on how far below those mandatory minimum sentences I should go. It does not matter if it is a 5K1.1 supplemented by an additional 5K1.1 or a Rule 35 motion, the factual content of the substantial assistance will drive their recommendation and that has occurred.*
>
> MR. BERARDI: *Okay*.
>
> THE COURT: It can't possibly matter if there is another Rule 35 motion filed or anything of the kind. What I will be listening to is what their view is as to the value of that cooperation, and especially what the government's view is as to how that should affect sentencing, *which I assume is what they are going to do today anyway*. Right?
>
> MR. ESQUEDA: *Correct*.
>
> THE COURT: And pointing to a plea agreement, which they appear to me to have completely satisfied their obligation under the plea agreement.
>
> MR. BERARDI: Okay, Your Honor.

Case No. 2:04-CR-170 DB, Dkt. No. 187, Tr. of Sentencing Hrg. at 4-6 (emphasis added).

 3) Tucker filed his direct appeal to the Tenth Circuit shortly after his sentencing. His chief point on appeal, in fact, his only point, was that the Government had breached the plea agreement by recommending a sentence of more than 10 years. This argument was based on

language in the written plea agreement that obligated the Government to recommend the ten-year "minimum mandatory consecutive sentence as provided for pursuant to 18 U.S.C. 924(c)." See Case No. 2:04-CR-170 DB, Dkt. No. 140, Statement in Advance of Plea at 7. Tucker argued that this "plain language" obligated the Government to recommend no more than ten years on all four counts. The Court of Appeals dealt with this issue in a comprehensive written opinion dated October 26, 2007, rejecting Tucker's position entirely and concluding that "nowhere did the government agree to recommend a total sentence of ten years for all counts, and we discern no indication that Tucker was anything other than completely aware of what sentencing prospects he faced, and completely aware that, depending on the extent of his § 5K1.1 substantial assistance, his sentencing could drop to some indeterminate level below the otherwise-applicable two ten-year statutory mandatory sentences." United States v. Tucker, 253 Fed.Appx. 718 (10th Cir. 2007).

    4) Following his direct appeal, Tucker, acting pro se, filed a habeas corpus petition pursuant to 28 U.S.C. § 2255 complaining of ineffective assistance of counsel and raising a number of issues that he claimed were not raised on direct appeal because his lawyer refused to raise them. Tucker claimed that: (1) there was no basis to support his conviction under 18 U.S.C. § 924(c); (2) the court participated (apparently improperly) in the plea negotiations; (3) the court failed to properly consider coercion; (4) the government breached the plea agreement; (5) there were factual errors in the pre-sentence report and at the sentencing hearing; (6) the defendant was improperly punished for exercising his constitutional rights; (7) the government suppressed mitigating evidence regarding the defendant's cooperation; and (8) the prosecution

was vindictive. See Tucker v. United States, 2008 WL 732724 (D. Utah March 17, 2008). Of these, numbers 4, 7, and 8 involved matters that are related to Tucker's present motions. Regarding number 4, the court ruled that the issue had been raised and decided on direct appeal. Id. at *4. Regarding number 7, the court found no merit in Tucker's contention that the government improperly suppressed mitigating information. To the contrary, the court found that the government had acknowledged defendant's cooperation. Id. at *5. Regarding number 8, the court directly addressed Tucker's concern about a Rule 35 motion, as follows:

> Compared to the two other co-defendants, who received sentences of nine years and eight and a half years, the Defendant's sentence was greater. The Defendant claims that he was singled out compared to the other two co-defendants because he was the only one that pled to using an explosive to commit a felony, in violation of 18 U.S.C. §§ 844(h)(1) and (2). *Furthermore, the government did not file a Rule 35 motion. The government provides two reasons for this. The first is that he was not forthcoming with information concerning the crimes, including a robbery that occurred in Grand Junction, Colorado. The second is that both co-defendants came forward immediately and confessed their involvement in the crimes, unlike the Defendant who continued to minimize his involvement in the commission of the crimes.*
>
> Tucker was not afforded the same sentence as the cooperating co-defendants due to the degree of cooperation he provided. The co-defendants came forward, offered to testify and were rewarded for their assistance. As [a] result, they were offered a reduced sentence for their substantial assistance. Tucker offered to cooperate but not to the degree of the co-defendants and is not subject to the same sentencing consideration.
>
> Yet the Defendant argues that he "provided detailed information on all of those involved in that incident but Colorado prosecutors were unwilling to bring indictments against any of those involved."
>
> The Court agreed with the government at sentencing that the level of cooperation provided by the Defendant was not "substantial":

> I find this sentence consistent with the other two sentences. I do think it is worth a couple of extra years for your lack of coming forward, and especially with the generosity of the government with the substantial assistance motion that they have made. I could sit here and very easily in this case have decided not to grant any departure based on that motion. I frankly could make a very good, strong position that you have not rendered substantial assistance.
>
> The Court also points out that the fact that Colorado prosecutors did not bring indictments is not the overriding factor as to whether the Defendant provided substantial assistance. As a whole, the Court found that the Defendant did not provide substantial assistance. The Court acknowledges that the Defendant is right that "the court only knows what gov. or defense tells it." But part of this record included the Defendant's Motion for Downward Departure, Defendant's Pre-Sentencing Memorandum, together with the government's responses to these motions.
>
> *In light of the information the Court has been presented with, it was reasonable, based on the degree of the Defendant's cooperation and assistance, for the government to file a motion for downward departure and not file a Rule 35 motion.* Furthermore, it was reasonable that the Court fashioned the sentence it did in light of the facts and circumstances presented in the pre-sentence report.

Tucker v. United States, 2008 WL 732724, *5 (D. Utah March 17, 2008) (citations omitted) (emphasis added).

## DISCUSSION

Tucker's present motions present a simple argument: that the government breached the plea agreement by not filing a Rule 35 motion for a reduction in his sentence. Tucker contends that the plain language of the plea agreement requires such a motion and that it is undisputed that the government failed to make such a motion. Consistent with the foregoing history, Tucker's motion must be denied because even if we accept as true that the government violated the plea agreement as Tucker alleges, it is clear Tucker was fully informed about the breach and could

9

have raised the issue on direct appeal, or, if not then, in his first habeas corpus petition. Indeed, with respect to the latter, Tucker did raise the issue, albeit in a slightly different way. See, e.g., United States v. Frady, 456 U.S. 152, 165 (1982) (providing a § 2255 proceeding may not be used to raise issues that should have been raised on a direct appeal); Spitnaz v. Boone, 464 F.3d 1213, 1215-16 (10th Cir. 2006) (providing Rule 60(b) motion may not lead to a "merits-based attack on the disposition of the prior habeas petition").

Of the many developments that led up to Tucker's sentencing, one thing is clear: by the time he was sentenced, he had provided to the government all of the information upon which the government would base its decisions regarding the extent of his cooperation and the resulting recommendation by the government regarding an appropriate reduction in his sentence because of such cooperation. His sentence had been delayed for that very purpose. By the time of the sentencing hearing, the government's obligation under the plea agreement with respect to § 5K1.1 and Rule 35 had become merged. They both addressed the same thing: how much of a sentencing reduction the government would recommend for Tucker's assistance. The prosecution knew that, the court knew it, and Tucker knew it.

Now, years later, and after exhausting ad nauseam all available avenues of relief, Tucker seeks to invoke the literal meaning of the words of the plea agreement to suggest that the government failed to honor the plea agreement. The effort fails because it is untimely, and, even if it were timely, for the additional reason that it is wholly lacking in merit. Tucker's present Rule 60(b) motion is an unsuccessful attempt to reinvent history. He would like the court to ignore the fact that he has had – and taken advantage of – multiple opportunities to complain that

10

he wasn't getting enough credit for his cooperation, and to argue that a Rule 35 motion was not filed by the government.

Tucker's present motion is based squarely on the proposition that the government was obligated to file a Rule 35 motion *after* his sentence. But from the time of his plea hearing forward Tucker himself understood fully well that the Rule 35 obligation could be addressed either pre-sentence (as was the case) or post-sentence:

> MR. TUCKER: We are stipulating to a 5K1.1 downward departure and . . .
>
> THE COURT: You are?
>
> MR. TUCKER: Yes, and a Rule 35 Motion from the government *either pre- or post-sentence.*

Case No. 2:04-CR-170 DB, Dkt. No. 186, Tr. of Plea Hrg. at 10-11 (emphasis added).

Furthermore, there is no question that Tucker knew at his sentencing hearing that the government was not going to make a Rule 35 motion. As noted above, Tucker's sentencing hearing was delayed for the very purpose of assessing his cooperation. By the time of his sentencing, his time to provide assistance had ended and the prosecutor clearly informed everyone present that "there would be no testimony [from Tucker], and therefore, there would be no Rule 35." Id. at Dkt No. 187, Tr. of Sentencing Hrg. at 5. The bulk of the discussion about his sentence centered on the quality of Tucker's assistance. Both the prosecution and the court found it less than adequate in certain respects. The court directly addressed the distinction between the cooperation provided by the co-defendants and Tucker, finding Tucker's less than the co-defendants' in terms of timeliness and quality. With respect to Tucker's information about the Grand Junction robbery, the government was similarly unimpressed, stating:

> I would ask the Court to focus on the nature and circumstances of the offenses. It is true that Mr. Tucker has provided some information to the government. Some of the information was quite good, and most recently I really thought that we could help Mr. Tucker even more, except the prosecutors in the case that he provided information on decided he just had too much liability with them in his testimony and chose not to use him based upon that and because of this case . . .
>
> Judge, he is facing roughly 24 years in prison with the minimum mandatories. I still believe that a significant sentence should be imposed for a couple of reasons. The nature and circumstances of the case, and they are most egregious, . . . [and] most recently . . . the defendant's motions before this Court where he seems to minimize his role in these cases significantly.

Case No. 2:04-CR-170 DB, Dkt. No. 187, Tr. of Sentencing Hrg. at 9.

Under these circumstances, it is disingenuous to even suggest that Tucker was not sufficiently informed to include his Rule 35 argument on direct appeal, or, failing that, in his § 2255 petition.

## CONCLUSION

Under all of the circumstances, and for the reasons stated above, the court finds Tucker's pending motions to be procedurally improper and without merit. Both motions are DENIED WITH PREJUDICE.

IT IS SO ORDERED.

DATED this 15th day of June, 2012.

_____
Dee Benson
United States District Judge